UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ARTEM MUSHEYEV,
Plaintiff,

v.

AMERICAN EXPRESS NATIONAL BANK;
CAPITAL ONE, N.A., successor by merger to
CAPITAL ONE BANK (USA), N.A.;
BMW FINANCIAL SERVICES NA, LLC; and
SERVICE FINANCE COMPANY, LLC,
Defendants.

Scanlon, MJ

RECEIVED
SEP 08 2026
PRO SE OFFICE

Civil Action No. 26-cv-5543-VMS

**JURY TRIAL DEMANDED**

# COMPLAINT

## I. Preliminary Statement

1. This is an action for actual, statutory, and punitive damages, costs, and attorney's fees brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), against four furnishers of information that received notice of Plaintiff's written consumer dispute from Experian Information Solutions, Inc. ("Experian"), failed to conduct the reasonable investigation the statute requires, "verified" information that was inaccurate, incomplete, and materially misleading on its face, and returned that information to Plaintiff's consumer file unchanged.

2. Plaintiff does not sue on the initial furnishing of information. He sues on what each Defendant did after Experian transmitted his dispute — the point at which the private right of action under 15 U.S.C. § 1681s-2(b) attaches.

3. Plaintiff's July 17, 2026 dispute was not a form letter. It identified every disputed item by furnisher, partial account number, and specific defective field; it enclosed an annotated screenshot of each disputed tradeline marking each defect; it enclosed a complete pre-dispute copy of the report, a government-issued photo identification, a Social Security

REC'D IN PRO SE OFFICE
SEP 8 '26 PM12:44

card, and a utility bill proving address; and it demanded the method of verification for any item verified. Experian confirmed in writing that it forwarded all of that material to each furnisher.

4. Each Defendant received that package and returned the same defective data. Six days after Experian closed the reinvestigation, Plaintiff pulled a complete file disclosure. Every defect he had identified remained on the file, field for field.

5. Separately and more seriously: two American Express tradelines carrying a combined $203,055 in reported charged-off balances were deleted from Plaintiff's Experian file on July 27, 2026 by Experian's own written dispute results, which reported each of them as "Deleted — This item was removed from your credit report." Both were still off the file on July 30, 2026, when Plaintiff pulled a complete Experian file disclosure that reports every account then on his file and lists a single American Express tradeline. Both reappeared within weeks — and both came back carrying a "Balance updated" date of August 3, 2026 and a past-due status date of "Aug 2026" on accounts charged off in 2024, one of which had not been reported at all for the preceding twenty months. That is reinsertion of deleted derogatory information coupled with re-aging of the delinquency, and it is pleaded as a separate count.

## II. Jurisdiction and Venue

6. This Court has subject matter jurisdiction under 15 U.S.C. § 1681p, which confers jurisdiction on the United States district courts over actions to enforce liability created under the FCRA, and under 28 U.S.C. § 1331, because this action arises under the laws of the United States.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred here: Plaintiff resides in Queens

County, New York, which lies within the Eastern District of New York; the consumer file at issue is maintained about a resident of this District; the consumer reports containing the disputed information were published to and about a consumer in this District; and Plaintiff's injuries were suffered here.

8. This Court has personal jurisdiction over each Defendant because each transacts business within the State of New York, each purposefully directed the furnishing of consumer credit information about a New York consumer into consumer reporting agency databases from which reports about that consumer are issued in New York, and Plaintiff's claims arise out of that conduct.

## III. Parties

9. Plaintiff Artem Musheyev is a natural person over the age of eighteen residing at 21116 82nd Avenue, Queens Village, New York 11427-1024, in Queens County. Plaintiff is a "consumer" as that term is defined at 15 U.S.C. § 1681a(c).

10. Defendant American Express National Bank ("American Express") is a federally chartered national bank with its principal place of business at 4315 South 2700 West, Salt Lake City, Utah 84184. American Express regularly and in the ordinary course of business furnishes information to consumer reporting agencies, including Experian, and is a "person" who furnishes information within the meaning of 15 U.S.C. § 1681s-2.

11. Defendant Capital One, N.A. ("Capital One") is a national banking association with its principal place of business at 1680 Capital One Drive, McLean, Virginia 22102. Capital One is the surviving entity of the October 1, 2022 merger of Capital One Bank (USA), National Association into Capital One, N.A., and by operation of 12 U.S.C. § 215a(e) holds all rights, obligations, and liabilities of the merged entity. Capital One regularly

furnishes information to consumer reporting agencies, including Experian, and is a "person" who furnishes information within the meaning of 15 U.S.C. § 1681s-2.

12. Defendant BMW Financial Services NA, LLC ("BMW Financial") is a limited liability company that reports its address to Experian as 5515 Parkcenter Circle, Dublin, Ohio 43017, and maintains a principal place of business at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677. BMW Financial regularly furnishes information to consumer reporting agencies, including Experian, and is a "person" who furnishes information within the meaning of 15 U.S.C. § 1681s-2.

13. Defendant Service Finance Company, LLC ("Service Finance") is a Florida limited liability company (Florida Document No. L04000066622) with its principal place of business at 555 South Federal Highway, Suite 200, Boca Raton, Florida 33432, and a registered agent of Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301. Service Finance regularly furnishes information to consumer reporting agencies, including Experian, and is a "person" who furnishes information within the meaning of 15 U.S.C. § 1681s-2.

14. Experian is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f). Experian is not named as a defendant in this action. Plaintiff reserves all rights against Experian.

## IV. Statutory Framework

15. When a consumer disputes the completeness or accuracy of an item in his file, 15 U.S.C. § 1681i(a)(2) requires the consumer reporting agency to provide notice of the dispute — together with all relevant information the consumer submitted — to the furnisher that reported the item.

16. Receipt of that notice triggers the furnisher's duties under 15 U.S.C. § 1681s-2(b)(1). The furnisher must:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to § 1681i(a)(2);

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds the information incomplete or inaccurate, report those results to all other consumer reporting agencies to which the furnisher provided the information; and

(E) if an item of information is found to be inaccurate or incomplete or cannot be verified, modify it, delete it, or permanently block its reporting.

17. Section 1681s-2(b) creates a private right of action. Unlike § 1681s-2(a), which is enforceable only by government agencies, the post-notice duties in § 1681s-2(b) are enforceable by the consumer. See 15 U.S.C. § 1681s-2(c), (d).

18. The investigation a furnisher must conduct is a reasonable one. A furnisher that merely confirms its own records match what it already reported, without examining the substance of the dispute or the documentation the consumer supplied, has not investigated within the meaning of the statute. See Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 430-31 (4th Cir. 2004); Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1303-04 (11th Cir. 2016); Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1157 (9th Cir. 2009). What is reasonable is ordinarily a question for the jury.

19. Information may be inaccurate for FCRA purposes even where individual data fields are arguably correct in isolation. A tradeline that is technically accurate but creates a materially misleading impression in the mind of a reasonable user of the report is actionable. Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 148 (4th Cir. 2008). Reporting that is internally contradictory, incomplete in material fields, or stale is misleading by that standard.

20. Information deleted from a consumer's file as a result of a reinvestigation may not be reinserted unless the furnisher "certifies that the information is complete and accurate." 15 U.S.C. § 1681i(a)(5)(B)(i). If reinsertion occurs, the consumer reporting agency must notify the consumer in writing within five business days, and must provide a statement that the consumer may add to his file. 15 U.S.C. § 1681i(a)(5)(B)(ii)-(iii).

21. A person who willfully fails to comply with any requirement imposed by the FCRA is liable for actual damages or statutory damages of not less than $100 and not more than $1,000, plus punitive damages, costs, and reasonable attorney's fees. 15 U.S.C. § 1681n(a). Willfulness includes reckless disregard of the statute's requirements. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57-60 (2007).

22. A person who negligently fails to comply is liable for actual damages, costs, and reasonable attorney's fees. 15 U.S.C. § 1681o(a).

## V. Factual Allegations

### A. The July 27, 2026 deletion of two American Express tradelines and the state of Plaintiff's file on July 30, 2026

23. Plaintiff has disputed items on his Experian consumer file on more than one occasion, including three American Express tradelines.

24. By written dispute results dated July 27, 2026, report number 3067-2988-44, Experian notified Plaintiff that its reinvestigation was complete and that it had deleted from his consumer file two American Express tradelines:

(a) American Express account no. ending 3293, reported with a charged-off balance of $123,426; and

(b) American Express account no. ending 9813, reported with a charged-off balance of $79,629.

25. A true and correct copy of those dispute results, together with the copy of Plaintiff's credit report transmitted with them, is attached as Exhibit G-1.

26. Exhibit G-1 reports Experian's results item by item under the heading "Credit Items and Public Records." It reports:

(a) AMEX, account ending 3293 — Deleted;
(b) AMEX, account ending 9813 — Deleted;
(c) AMERICAN EXPRESS, account ending 9297343 — Pending;
(d) BMW FINANCIAL SERVICES/CREDIT, account 400386 — Pending;
(e) SERVICE FINANCE COMPANY, account 213 — Pending;
(f) CAPITAL ONE, account 515676 — Pending; and
(g) CAPITAL ONE, account 552869 — Pending.

27. Exhibit G-1 supplies Experian's own definition of the result it applied. Under the heading "How to read your results," Exhibit G-1 states that Deleted means "This item was removed from your credit report." It separately defines Remains as meaning that the company reporting the information has certified to Experian that the information is accurate and that the item was not changed as a result of the dispute. Experian applied "Deleted" to both American Express tradelines. It did not apply "Remains," and it did not report any certification of accuracy as to either one.

28. Exhibit G-1 also contains the copy of Plaintiff's credit report as it stood on July 27, 2026. Its "Potentially negative items" section lists five tradelines: American Express account ending 9297343; BMW Financial Services/Credit account 400386; Capital One account 515676; Capital One account 552869; and Service Finance Company account 213. Its "Accounts in good standing" section lists the remainder of Plaintiff's accounts. Neither American Express account ending 3293 nor account ending 9813 appears in either section. Both were gone from the file on the day Experian reported them deleted.

29. The five items Exhibit G-1 reports as "Pending" as of July 27, 2026 are the same five items Experian resolved three and a half weeks later in the August 20, 2026 dispute results. Compare Exhibit G-1 with Exhibit C.

30. Exhibit G-1 further reports that, as of July 27, 2026, Capital One account 515676 carried the status "Account charged off. $7,184 written off. $7,184 past due as of Jul 2026," with a recent balance of $7,184 as of July 14, 2026; that Capital One account 552869 carried the status "Paid, Closed. $37,035 written off" with no reported balance; and that BMW Financial Services/Credit account 400386 carried the bare status "Closed." Each of those tradelines is pleaded above and each was reported the same way after the investigations at issue.

31. Deletion of a tradeline at the conclusion of a reinvestigation means the item could not be verified as complete and accurate, or that the furnisher instructed its removal. Either way, both tradelines were deleted from Plaintiff's file as a result of a reinvestigation conducted under 15 U.S.C. § 1681i, and the reinsertion bar of 15 U.S.C. § 1681i(a)(5)(B) attached to both of them on July 27, 2026.

32. On July 30, 2026 — three days after the deletions reported in Exhibit G-1, thirteen days after Plaintiff mailed the dispute described in Section V.B below, and while Experian's reinvestigation of the remaining items was pending — Plaintiff obtained a complete Experian file disclosure. A true and correct copy is attached as Exhibit G-2.

33. Exhibit G-2 is a fifty-two page printable file disclosure that lists every account then reported on Plaintiff's Experian file: eleven open accounts, all closed accounts, all collection accounts, and all public records. Exhibit G-2 at 3–48.

34. Exhibit G-2 reports exactly one American Express tradeline, the account ending 9029 addressed at Section V.E(i) below. Exhibit G-2 at 14–15.

35. Neither American Express account ending 3293 nor American Express account ending 9813 appears anywhere in Exhibit G-2. Neither is listed among the open accounts, among the closed accounts, among the collection accounts, or in the account summary. As of July 30, 2026, both tradelines were off Plaintiff's Experian file, exactly as Exhibit G-1 reflects.

36. Consistent with their absence, Exhibit G-2 reports Plaintiff's total debt as of July 30, 2026 as $72,738, his total credit card and credit line debt as $4,177, and the total amount past due across all of his accounts as $7,184 — the Capital One account 515676 balance, and nothing else. Exhibit G-2 at 1, 51. It reports three accounts ever sixty days late or worse or carrying a derogatory indicator. Exhibit G-2 at 50.

37. Exhibit G-2 reports a FICO Score 8 based on Experian data of 709 as of July 30, 2026. Exhibit G-2 at 1, 50.

38. Twenty-seven days later, the same file, reported by the same agency and scored on the same model, carried both American Express tradelines, reported $86,813 in total past-due amounts, reported four accounts ever sixty days late or worse, and produced a FICO Score 8 of 694. Exhibit D at 1, 51–52. The increase in total reported past-due debt between the two disclosures is $79,629 — precisely the balance reported on reinserted account ending 9813.

39. Exhibit G-2 and Exhibit D are the same document type, generated by the same source, twenty-seven days apart. Read together they establish the sequence on which Count II

rests: the two tradelines were off Plaintiff's file on July 30, 2026, and back on it by August 20, 2026, carrying Balance Updated dates of August 3, 2026.

40. The full sequence is documented, start to finish, by Experian's own records:

(a) July 27, 2026 — Experian reports both American Express tradelines "Deleted," meaning removed from the report, and neither appears anywhere on the accompanying copy of Plaintiff's report. Exhibit G-1.

(b) July 30, 2026 — a complete fifty-two page file disclosure reports neither tradeline, in any section. Exhibit G-2.

(c) August 3, 2026 — the "Balance updated" date both tradelines carry when they reappear. Exhibit D.

(d) August 20, 2026 — both tradelines appear on the report accompanying Experian's dispute results. Exhibit C.

(e) August 26, 2026 — both tradelines appear on a complete file disclosure, each reporting a past-due status date of "Aug 2026" on a debt charged off in 2024. Exhibit D.

41. Seven days separate Experian's written confirmation that these tradelines had been removed from Plaintiff's credit report from the date the reinserted tradelines report as their own balance-update date. Whatever occurred in that window was an affirmative furnishing decision, not the passive persistence of data already on file.

**B. The July 17, 2026 written dispute**

42. On July 17, 2026, Plaintiff mailed Experian a twelve-page written dispute by USPS Certified Mail, article number 9207 1901 4298 0490 2726 75, addressed to Experian, P.O. Box 4500, Allen, Texas 75013. A true and correct copy of the dispute, its annotated exhibits, and the certified mail label, and the USPS tracking record for that article, is attached as Exhibit F.

43. The dispute enclosed: a complete pre-dispute copy of Plaintiff's Experian report (Exhibit A to the dispute); annotated excerpts of each disputed tradeline marked to identify each defective field (Exhibits B-1 through B-6 to the dispute); a copy of Plaintiff's New York

State identification card; a copy of his Social Security card; and a Spectrum utility statement addressed to him at the Queens Village address, as proof of residence.

44. The dispute identified each item by furnisher, by partial account number, and by the specific field alleged to be defective. It cited 15 U.S.C. §§ 1681e(b), 1681i, and 1681s-2(b), and expressly demanded (i) reinvestigation within thirty days under § 1681i(a)(1)(A); (ii) the dispute notation required by § 1681i(c); (iii) forwarding of all submitted material to the furnishers under § 1681i(a)(2); (iv) the method of verification for any item verified, under § 1681i(a)(6)(B)(iii) and (a)(7); and (v) notice to prior recipients of any correction under § 1681i(a)(5)(D) and § 1681i(d).

45. The dispute raised seven items. Six concerned tradelines furnished by the Defendants named here; the seventh concerned personal identifying information and is not at issue in this action.

**C. Experian forwarded the dispute to each Defendant**

46. Experian issued written dispute results dated August 20, 2026, Report Number 1805-4325-14. A true and correct copy is attached as Exhibit C.

47. Exhibit C states that Experian contacted the company reporting the disputed information, supplied that company with all relevant information and any documents Plaintiff provided with his dispute, and instructed it to review all information provided about the dispute, verify the accuracy of the information, provide a response, and update its records and systems as necessary.

48. Each Defendant therefore received notice of Plaintiff's dispute under 15 U.S.C. § 1681i(a)(2), together with the annotated exhibits and supporting documents Plaintiff submitted. Each Defendant's duties under 15 U.S.C. § 1681s-2(b)(1) were triggered on receipt.

49. Exhibit G-2 independently corroborates that the reinvestigation was underway and that Experian had flagged the disputed items. As of July 30, 2026, Plaintiff's file carried the notation "CONSUMER STATEMENT ITEM IN DISPUTE BY CONSUMER" on the Service Finance account 213997X tradeline and on the BMW Financial tradeline opened June 9, 2023 — the § 1681i(c) dispute notation Plaintiff demanded in his July 17, 2026 letter. Exhibit G-2 at 5, 43.

**D. The results each Defendant reported**

50. Exhibit C reports the following outcomes:

(a) AMEX, account 349991XXXXXXXXXX — "Verified and Updated";
(b) CAPITAL ONE, account 515676XXXXXXXXXX — "Verified and Updated";
(c) CAPITAL ONE, account 552869XXXXXXXXXX — "Verified and Updated";
(d) SERVICE FINANCE COMPAN, account 213XXXX — "Verified and Updated";
(e) BMW FINANCIAL SERVICES, account 400386XXXX — "Updated."

51. In each instance marked "Verified and Updated," Experian's stated result was that "[t]he information you disputed has been verified as accurate; however, information unrelated to your dispute has been updated." In other words, each of those Defendants told Experian that the very fields Plaintiff identified as defective were accurate as reported.

52. On August 26, 2026 — six days after Experian closed the reinvestigation — Plaintiff obtained a complete Experian file disclosure. A true and correct copy is attached as Exhibit D.

53. Exhibit D establishes that every defect Plaintiff identified in his July 17, 2026 dispute remained on his file after each Defendant's investigation, field for field, as set out below.

**E. The post-investigation state of each disputed tradeline**

**(i) American Express — account ending 9029 (opened September 23, 2011)**

54. As of Exhibit D, this tradeline reports: Status — "Account charged off. $99,175 written off. $99,175 past due as of Apr 2024"; Balance — $99,175; Past due amount — $99,175;

Credit limit — blank; Terms — "1 Month"; Responsibility — Individual; Open/closed — Closed.

55. The Credit Limit field is blank on a revolving credit card account. A blank credit limit deprives any scoring model and any human user of the denominator needed to evaluate utilization on the account, and renders the tradeline incomplete. Incomplete reporting is itself an accuracy failure under the FCRA.

56. The Terms field reports "1 Month." No credit card account carries a one-month term. The field is facially wrong.

57. The tradeline reports $99,175 simultaneously as the Balance and as the Past Due Amount on an account reported closed and charged off. The composite presents to a reasonable user as an active, currently collectible past-due obligation of $99,175.

58. The payment history grid is internally contradictory on its face. It reports 30 days past due in July 2023, 60 days past due in August 2023, CLS (Closed) in September 2023 and again in October 2023, and then resumes a fresh delinquency progression — 30 in November 2023, 60 in December 2023, 90 in January 2024, 120 in February 2024, 150 in March 2024, and Charge Off in April 2024. An account that the furnisher reported closed in September and October 2023 cannot begin a new 30-day delinquency cycle in November 2023 and escalate to charge-off. One of those two reportings is false, and the grid does not disclose which.

59. Plaintiff identified every one of these defects in Dispute 1 of Exhibit F and attached an annotated exhibit marking each field. American Express verified the tradeline as accurate. Nothing was corrected. Compare Exhibit F, Dispute 1, with Exhibit D at 15.

60. The identical defects appear on the July 30, 2026 disclosure Plaintiff obtained while the reinvestigation was pending. Compare Exhibit G-2 at 14–15 with Exhibit D at 15: the Credit Limit field is blank in both; the Terms field reports "1 Month" in both; the Balance and the Past Due Amount are $99,175 in both; the status line reports "$99,175 past due as of Apr 2024" in both; and the payment grid is identical, including the CLS entries for September and October 2023 followed by the 30/60/90/120/150/Charge Off progression from November 2023 through April 2024. American Express's investigation changed nothing on this tradeline. Exhibit G-2 also shows that the tradeline already bore the comment "Account previously in dispute — investigation complete, reported by data furnisher" before the July 17, 2026 dispute, and bore it again afterward.

**(ii) American Express — account ending 9813 (reinserted; opened January 30, 2016)**

61. This is one of the two tradelines Experian deleted on July 27, 2026. See Exhibit G-1.

62. As of Exhibit D, it is back on the file and reports: Status — "Account charged off. $79,629 written off. $79,629 past due as of Aug 2026"; Status updated — Jun 2024; Balance — $79,629; Balance updated — August 3, 2026; Past due amount — $79,629; Credit limit — blank; Terms — "1 Month."

63. The Status field reports the account as "past due as of Aug 2026" while the Status Updated field reports June 2024. Those two statements cannot both be true. Either the status was updated in August 2026, in which case the Status Updated date is wrong, or it was not, in which case the account is not past due as of August 2026.

64. Reporting an account charged off in 2024 as "past due as of Aug 2026" advances the apparent date of the delinquency by more than two years. Recency of delinquency is among the most heavily weighted inputs in consumer credit scoring. The effect of the

reported date is to make a two-year-old charge-off appear to be a current, ongoing default.

65. The payment grid reports the account in Collection ("C") for January through May 2024 and in Charge Off ("CO") for June through August 2024 — two mutually exclusive statuses for the same account within a single reporting year. It then reports "ND" (no data) for every month of 2025 and for January through July 2026, and "CO" again in August 2026. An account cannot lie dormant and unreported for twenty consecutive months and then generate a fresh charge-off status in the twenty-first.

66. The Credit Limit field is blank and the Terms field reports "1 Month," for the reasons stated above.

**(iii) American Express — account ending 3293 (reinserted; opened January 6, 2021)**

67. This is the second of the two tradelines Experian deleted on July 27, 2026. See Exhibit G-1.

68. As of Exhibit D, it is back on the file and reports: Status — "Account charged off. $123,426 written off. $123,426 past due as of Aug 2026"; Status updated — Dec 2023; Balance — $123,426; Balance updated — August 3, 2026; Past due amount — $123,426; Credit limit — blank; Terms — "1 Month"; Highest balance — $142,244.

69. The Status Updated field reports December 2023 while the Status field reports the account past due as of August 2026 and the Balance Updated field reports August 3, 2026. The tradeline contradicts itself as to when it was last reported.

70. The payment grid for 2024 alternates between Charge Off and no-data on a month-to-month basis: CO in January, CO in February, ND in March, ND in April, CO in May, ND in June, CO in July, ND in August, CO in September, and ND for October through December. An account does not oscillate between charged-off and unreported from one

month to the next. The grid is not a record of the account's status; it is noise presented to users of the report as a status history.

71. The grid then reports ND for every month of 2025 and for January through July 2026, followed by CO in August 2026 — the same month the tradeline was returned to Plaintiff's file.

**(iv) Capital One — account beginning 515676 (opened November 15, 2017)**

72. As of Exhibit D, this tradeline reports: Status — "Account charged off. $7,184 written off. $7,184 past due as of Aug 2026"; Status updated — Dec 2024; Balance — $7,184; Balance updated — August 7, 2026; Past due amount — $7,184; Credit limit — $15,000; Highest balance — $13,185; Open/closed — Closed.

73. The Status Updated field reports December 2024 while the Balance Updated field reports August 7, 2026 and the status line reports the account past due as of August 2026. Those dates contradict one another.

74. The payment grid reports a delinquency progression of 30 (June 2024), 60 (July 2024), 90 (August 2024), 120 (September 2024), 150 (October 2024), 150 (November 2024), and Charge Off (December 2024) — and then reports Charge Off in every single month from January 2025 through August 2026, twenty consecutive months.

75. The balance history in Exhibit C confirms the data behind those twenty months is frozen. Every month from January 2025 through July 2026 reports the identical balance of $7,184, an identical scheduled payment of $0, and the identical notation "$0 on 10/30/2024." Capital One is reporting a single static data point from October 2024 as if it were a fresh monthly status through August 2026.

76. The tradeline reports $7,184 as both the Balance and the Past Due Amount on a closed, charged-off account — the same materially misleading composite described above.

77. The past-due date on this tradeline advances month over month while nothing beneath it moves. On July 30, 2026, the status line read "Account charged off. $7,184 written off. $7,184 past due as of Jul 2026," with a Balance Updated date of July 14, 2026 and a payment grid reporting Charge Off in every month from January 2026 through July 2026. Exhibit G-2 at 27. On August 26, 2026, the same tradeline read "$7,184 past due as of Aug 2026," with a Balance Updated date of August 7, 2026 and Charge Off added for August 2026. Exhibit D. The amount, the credit limit, the highest balance, and the underlying October 2024 data point are identical across both disclosures. The only field that moved is the date on which the debt is represented to be past due.

78. A furnisher that advances the reported past-due date each month on a static, four-year-old charged-off obligation is not reporting a current status; it is refreshing the apparent recency of a delinquency. Plaintiff put that defect squarely before Capital One at Dispute 2 of Exhibit F. Capital One verified the tradeline and advanced the date again.

79. Plaintiff identified each of these defects at Dispute 2 of Exhibit F with an annotated exhibit. Capital One verified the tradeline as accurate. Nothing was corrected.

**(v) Capital One — account beginning 552869 (opened January 5, 2021; reported as "Business Card")**

80. As of Exhibit D, this tradeline reports: Status — "Paid, Closed. $37,035 written off"; Balance — blank; Credit limit — $50,000; Highest balance — $50,369; Account type — Business Card; Responsibility — Individual; Status updated — Jun 2026.

81. The Status field reports the account as "Paid" and as carrying $37,035 "written off" in the same sentence. An account cannot simultaneously have been paid and have been written off as uncollectible. The two conditions are mutually exclusive, and the composite is

materially misleading to any reasonable user of the report, who cannot tell from the tradeline whether Plaintiff satisfied the obligation or defaulted on it.

82. The Balance field is blank on a tradeline that carries a written-off figure of $37,035 in its status line. The tradeline is incomplete on the single field a user would most need in order to evaluate it.

83. The balance history in Exhibit C reports a balance of $37,200 for February through May 2026, while the status line on the same tradeline reports $37,035 written off. The tradeline contradicts itself as to the amount at issue.

84. The reported Highest Balance of $50,369 exceeds the reported Credit Limit of $50,000.

85. The payment grid reports Charge Off in every month from November 2023 through June 2026 — thirty-two consecutive months of charge-off status on an account the same tradeline describes as "Paid."

86. The self-contradictory status line predates the dispute and survived it unchanged. As of July 30, 2026, this tradeline already reported "Paid, Closed. $37,035 written off," with a blank Balance field, a Credit Limit of $50,000, a Highest Balance of $50,369, and a payment grid reporting Charge Off in every month from November 2023 through June 2026. Exhibit G-2 at 28. Capital One had the contradiction in front of it before Plaintiff disputed, was handed it in annotated form during the dispute, verified it, and reports it still.

87. Plaintiff identified each of these defects at Dispute 3 of Exhibit F with an annotated exhibit. Capital One verified the tradeline as accurate. Nothing was corrected.

88. Pleading in the alternative and without conceding the point: to the extent Capital One contends this account was extended for business purposes and therefore falls outside 15

U.S.C. § 1681a(d), Capital One nonetheless elected to furnish it to a consumer reporting agency for inclusion in Plaintiff's individual consumer file, designated the Responsibility field "Individual," and thereby caused the information to bear on Plaintiff's personal credit worthiness in reports used and expected to be used for personal credit purposes. Having furnished the item as consumer-file information, Capital One assumed the § 1681s-2(b) duties that attach to it. The character of information appearing in a consumer's file is determined by the purposes for which reports containing it are used and expected to be used, not by the furnisher's description of the account's purpose.

**(vi) BMW Financial Services — account beginning 400386 (opened June 30, 2021; closed June 2023)**

89. As of Exhibit D, this tradeline reports: Account type — Auto Lease; Original balance — $73,238; Open/closed — Closed; Status — "Closed."; Status updated — Jun 2023; Responsibility — Individual; Recent Payment — $3,029 as of June 6, 2023; Comments — "Loan assumed by another party." The payment grid carries a single derogatory rating: 30 days past due in March 2022.

90. The Comments field states the obligation was assumed by another party. The Responsibility field states Plaintiff was individually responsible. The grid assigns a delinquency to Plaintiff. Those three statements are not reconcilable. If another party assumed the obligation, the reporting does not establish that the March 2022 rating is attributable to Plaintiff; if the rating is attributable to Plaintiff, the assumption comment is inaccurate.

91. The Status field reads only "Closed." It states no disposition — not "paid," not "obligation satisfied," not "balance owing." Every other closed BMW Financial lease on the same file carries an express disposition. The bare "Closed" designation on this

tradeline, combined with the derogatory rating and the assumption comment, leaves a user unable to determine whether the obligation was satisfied and by whom.

92. This tradeline is flagged "potentially negative" on Plaintiff's file solely by reason of the March 2022 rating.

93. Plaintiff disputed this tradeline specifically and separately at Dispute 4 of Exhibit F, and disputed a different BMW Financial tradeline bearing the same masked account prefix — the June 9, 2023 lease reported as open — at Dispute 6.

94. Exhibit C reports a single BMW Financial result: account 400386XXXX, "Updated." The before-and-after comparison in Exhibit C shows the change was applied to the Dispute 6 tradeline — the June 9, 2023 lease, Responsibility "Joint with Rita Iosifovna Mosheshvili," whose Status was changed from "Open/Never late" to "Paid, Closed/Never late."

95. BMW Financial thus corrected the tradeline raised at Dispute 6 and left the tradeline raised at Dispute 4 untouched. The March 2022 rating, the "Individual" responsibility designation, and the assumption comment all remain on Plaintiff's file after the investigation. Exhibit D at 22.

96. Plaintiff expressly demanded at Dispute 4 that, absent records attributing the March 2022 delinquency to him rather than to the assuming party, the rating be deleted. BMW Financial produced no such records and did not delete the rating.

97. This tradeline is reported identically on the July 30, 2026 disclosure: Status "Closed." with no disposition, Responsibility "Individual," Comments "Loan assumed by another party," and a single 30-day rating in March 2022. Exhibit G-2 at 21. The comparison of

Exhibit G-2 with Exhibit D establishes that BMW Financial's post-notice investigation left every field Plaintiff disputed exactly as it found it.

**(vii) Service Finance Company — account 213997X (opened November 14, 2019)**

98. As of Exhibit D, this tradeline reports: Account type — Home Improvement Loan; Original balance — $38,500; Terms — 240 months; Open/closed — Closed; Status — "Paid, Closed."; Status updated — Aug 2023; Responsibility — Individual. It is flagged "potentially negative."

99. The payment grid carries exactly two derogatory ratings: 30 days past due in December 2020, and 30 days past due in May 2022. Those two ratings are the sole basis for the negative designation on an account that is otherwise reported paid and closed.

100. Plaintiff disputed both ratings at Dispute 5 of Exhibit F, attached an annotated exhibit, and expressly demanded the method of verification under 15 U.S.C. § 1681i(a)(6)(B)(iii) and (a)(7), stating that absent production of records verifying each rated month the ratings must be deleted.

101. Service Finance reported the tradeline "Verified and Updated." Exhibit C. Both ratings remain on the file. Exhibit D at 44. No method of verification was ever produced.

102. Plaintiff's Experian file also carries a second Service Finance tradeline — account 213999X — opened the same day, November 14, 2019, with an original balance of $16,500 and terms of 102 months, reported "Paid, Closed/Never late" with no derogatory ratings whatsoever. Exhibit D at 45.

103. Both ratings appear on the July 30, 2026 disclosure in the same posture: 30 days past due in December 2020 and 30 days past due in May 2022, on an account otherwise reported "Paid, Closed" and flagged potentially negative, and carrying Plaintiff's dispute notation. Exhibit G-2 at 43. The companion account 213999X, opened the same day, is likewise

reported "Paid, Closed/Never late" on both disclosures. Exhibit G-2 at 44; Exhibit D at 45. Nothing about either tradeline changed as a result of Service Finance's investigation.

104. Two obligations reported by the same furnisher as originated on the same day to the same consumer, with materially different principal amounts and terms and diametrically opposed payment histories, present an obvious attribution and duplication question that a reasonable investigation would have identified and resolved. Plaintiff pleads in the alternative that the December 2020 and May 2022 ratings on account 213997X are misattributed to him, or duplicate a single obligation split across two tradelines.

**F. American Express reinserted two deleted tradelines with re-aged delinquency dates**

105. Plaintiff repeats and realleges the allegations concerning American Express accounts ending 3293 and 9813 as though fully set forth here.

106. Both tradelines were deleted from Plaintiff's Experian file on July 27, 2026, by written dispute results that reported each as "Deleted — This item was removed from your credit report." Exhibit G-1.

107. Because the deletions occurred on July 27, 2026 and both tradelines were back on the file by August 20, 2026, Experian's obligation under 15 U.S.C. § 1681i(a)(5)(B)(ii) to notify Plaintiff in writing within five business days of the reinsertion arose during that window. Plaintiff received no such notice. He also received no notice under § 1681i(a)(5)(B)(iii) of his right to add a statement to his file concerning the reinserted items.

108. Under 15 U.S.C. § 1681i(a)(5)(B)(i), neither item could lawfully be reinserted into Plaintiff's file unless American Express certified to Experian that the information was complete and accurate.

109. Both tradelines nonetheless appear on the file copy transmitted with Experian's August 20, 2026 dispute results (Exhibit C) and on the complete file disclosure of August 26, 2026 (Exhibit D).

110. The window in which the reinsertion occurred is documented. Exhibit G-2, the complete file disclosure of July 30, 2026, reports a single American Express tradeline and does not report either deleted account. Exhibit C, the dispute results transmitted August 20, 2026, reports both. Exhibit D, the complete file disclosure of August 26, 2026, reports both, each carrying a Balance Updated date of August 3, 2026. The reinsertion therefore occurred between July 30 and August 20, 2026, and the August 2026 dates the tradelines carry were furnished at the moment of reinsertion rather than carried forward from prior reporting.

111. Plaintiff received no written notice of reinsertion within five business days as required by 15 U.S.C. § 1681i(a)(5)(B)(ii). Experian is not a defendant in this action; the absence of the statutory notice is pleaded to establish the sequence of the reinsertion and the absence of any lawful basis for it, not as an independent claim against Experian.

112. Both reinserted tradelines returned to the file carrying a "Balance updated" date of August 3, 2026 and a past-due status date of "Aug 2026" — dates that post-date the deletion and that appear on accounts charged off in 2024. In the case of account ending 9813, the tradeline reported no data at all for the twenty months preceding its reinsertion, and then reported a Charge Off status for August 2026.

113. Reinserting a previously deleted charge-off with a refreshed past-due date is re-aging. It resets the apparent recency of the delinquency, restarts the consumer's exposure to the

most heavily weighted negative factor in credit scoring, and does so on data the furnisher had already allowed to be removed from the file.

114. One of two things is true. Either American Express certified to Experian that this information was complete and accurate — which it was not, for every reason set out above — or American Express re-reported the deleted information without any certification at all. Under either account, American Express acted knowingly or in reckless disregard of its obligations under 15 U.S.C. § 1681s-2(b) and the reinsertion bar of § 1681i(a)(5)(B).

115. Experian's August 20, 2026 results letter contains the notice: "Since you received your personal credit report, we discovered an inaccuracy. We are sending you a new personal credit report with the corrected information." Exhibit C. Plaintiff alleges on information and belief that this notice relates to the reinsertion described above, and that discovery of Experian's ACDV records and American Express's dispute-response files will establish the mechanism and the certification (or its absence).

**G. Injury to Plaintiff**

116. As of the August 26, 2026 disclosure, Plaintiff's FICO Score 8 based on Experian data is 694. Exhibit D at 51.

117. Experian's own score-factor analysis in Exhibit D identifies the three factors hurting that score as "Serious delinquency," "Bad payment history," and "Amount past due." It states that Plaintiff has four accounts that were ever 60 days late or worse or carry a derogatory indicator, six accounts with a missed payment or derogatory indicator, and $86,813 in total amounts past due. Exhibit D at 51-52.

118. Every one of those inputs is supplied by the tradelines at issue in this action. Plaintiff's ten open accounts are all reported current, with zero late payments across every one of

them and total revolving usage of one percent. Exhibit D at 1. The entirety of the negative content on Plaintiff's file comes from the Defendants' tradelines.

119. The effect of the reinsertion on Plaintiff's file is measurable and documented in two disclosures from the same source twenty-seven days apart.

120. On July 30, 2026, with both American Express tradelines off the file, Plaintiff's FICO Score 8 based on Experian data was 709. Experian's score-factor analysis reported total past-due amounts of $7,184 and three accounts ever sixty days late or worse or carrying a derogatory indicator. Exhibit G-2 at 1, 50–51.

121. On August 26, 2026, after the two tradelines had been returned to the file and six days after each Defendant reported the results of its investigation, the same score was 694. The same analysis reported $86,813 in total past-due amounts and four accounts ever sixty days late or worse or carrying a derogatory indicator. Exhibit D at 51–52.

122. Between those two dates Plaintiff opened no new account, missed no payment, and increased no balance. Every open account on his file was reported current on both disclosures, with no late payment on any of them. Compare Exhibit G-2 at 1, 3–13 with Exhibit D at 1. The fifteen-point decline in score, the increase of one in the count of derogatory accounts, and the increase of $79,629 in reported past-due debt are attributable to the reinsertion of the two American Express tradelines and to the reporting each Defendant verified rather than corrected.

123. This decline is post-notice injury. It occurred after Experian transmitted Plaintiff's dispute to each Defendant under 15 U.S.C. § 1681i(a)(2) and after each Defendant discharged — or failed to discharge — its duties under 15 U.S.C. § 1681s-2(b). It is pleaded as damage caused by Defendants' post-dispute conduct.

124. On June 22, 2026, Truist Bank d/b/a LightStream denied Plaintiff's application for a $100,000, thirty-six month installment loan, Reference ID 46482043. The stated reasons were "Debt to income ratio exceeds guidelines," "Level of delinquency on accounts," and "Insufficient income and/or assets for loan amount requested." The adverse action notice disclosed a credit score of 711 and identified the key adverse factors as "Serious delinquency," "Length of time accounts have been established," "Amount past due on accounts," "Proportion of balances to credit limits is too high on revolving accounts," and "The number of inquiries on file." True and correct copies of the loan application and the denial notice are attached as Exhibits J-1 and J-2.

125. Plaintiff pleads the LightStream denial as evidence of the materiality of the disputed fields and of the market consequence of the reporting at issue. Plaintiff does not plead it as damage caused by Defendants' post-dispute conduct; it predates the July 17, 2026 dispute.

126. As a direct and proximate result of each Defendant's failure to comply with 15 U.S.C. § 1681s-2(b), Plaintiff has suffered and continues to suffer: continued publication of inaccurate and materially misleading derogatory information to every user of his Experian file; denial of and reduced access to credit on reasonable terms; increased cost of credit; loss of the ability to obtain financing on the terms for which he applied; out-of-pocket expenses including certified mailing, copying, and report costs; loss of time; and emotional distress, including anxiety, frustration, loss of sleep, embarrassment, and humiliation, together with the substantial time Plaintiff was forced to divert from his work and his family to document, dispute, and dispute again information that should have been corrected the first time he identified it.

## VI. Causes of Action

**COUNT I — Violation of 15 U.S.C. § 1681s-2(b) — American Express National Bank**

127. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

128. American Express received notice of Plaintiff's dispute from Experian pursuant to 15 U.S.C. § 1681i(a)(2), together with the annotated exhibits and supporting documents Plaintiff submitted.

129. American Express failed to conduct a reasonable investigation of the disputed information, in violation of 15 U.S.C. § 1681s-2(b)(1)(A). A reasonable investigation of a tradeline whose payment grid reports the account closed in September and October 2023 and then delinquent again from November 2023 forward would have identified the contradiction on its face. American Express did not correct it.

130. On information and belief, Experian transmitted Plaintiff's dispute to American Express through the e-OSCAR Automated Consumer Dispute Verification system, which reduced Plaintiff's twelve-page documented dispute and its annotated exhibits to a standardized dispute code, and American Express verified the tradeline by automated comparison of that code against the same Metro 2 reporting tape that generated the tradeline, without human review of the documents Plaintiff supplied. An automated cross-check of the furnisher's own reporting tape is not the reasonable investigation the statute requires. See Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 430-31 (4th Cir. 2004).

131. American Express failed to review all relevant information Experian provided, in violation of 15 U.S.C. § 1681s-2(b)(1)(B). Plaintiff's dispute enclosed annotated exhibits marking each defective field on each tradeline. Had those materials been reviewed, no reasonable furnisher would have returned a verification.

132. American Express reported inaccurate results of its investigation to Experian, in violation of 15 U.S.C. § 1681s-2(b)(1)(C).

133. American Express failed to modify, delete, or permanently block information that was inaccurate, incomplete, and incapable of verification as reported, in violation of 15 U.S.C. § 1681s-2(b)(1)(E). The blank credit limit, the "1 Month" terms, the self-contradictory payment grids, the past-due amounts reported on closed charged-off accounts, and the contradictions between the Status Updated and Balance Updated fields all survived the investigation unchanged.

134. On information and belief, American Express failed to report its findings to the other nationwide consumer reporting agencies to which it furnished the same information, in violation of 15 U.S.C. § 1681s-2(b)(1)(D).

135. The foregoing violations were willful within the meaning of 15 U.S.C. § 1681n. American Express is a sophisticated institutional furnisher that reports to the nationwide consumer reporting agencies at scale, is fully familiar with the FCRA and with Metro 2 reporting requirements, and knew or acted in reckless disregard of the fact that the reporting described above was inaccurate, incomplete, and materially misleading. Plaintiff handed it the defects, field by field, with annotated exhibits. It verified them anyway. The account ending 9029 tradeline bore the comment "Account previously in dispute — investigation complete, reported by data furnisher" before Plaintiff's July 17, 2026 dispute. American Express therefore had actual, documented notice that the accuracy of this tradeline had been challenged at least once before, and it returned the same defective data again.

136. In the alternative, the foregoing violations were negligent within the meaning of 15 U.S.C. § 1681o.

137. As a direct and proximate result, Plaintiff has suffered the injuries described above and is entitled to actual damages, statutory damages of not less than $100 and not more than $1,000 as to each Defendant, punitive damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1681n and 1681o.

**COUNT II — Violation of 15 U.S.C. § 1681s-2(b) — Knowing or Reckless Re-Furnishing of Deleted, Inaccurate Information (Reinsertion and Re-Aging) — American Express National Bank**

138. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

139. American Express accounts ending 3293 and 9813 were deleted from Plaintiff's Experian consumer file as a result of a reinvestigation, by written dispute results dated July 27, 2026, report number 3067-2988-44. Exhibit G-1. Their absence from the file is independently documented by the complete Experian file disclosure of July 30, 2026, which reports a single American Express tradeline and does not report either account anywhere in the disclosure. Exhibit G-2.

140. Section 1681i(a)(5)(B) imposes its duties on the consumer reporting agency, and Experian is not a defendant in this action. Plaintiff pleads the reinsertion bar as the statutory context that establishes the sequence of the reinsertion and the unlawfulness of American Express's own post-dispute furnishing, not as an independent claim against Experian.

141. Under 15 U.S.C. § 1681i(a)(5)(B)(i), those items could not be reinserted absent a certification from American Express that the information was complete and accurate.

142. Both items were reinserted into Plaintiff's file and appear on Exhibits C and D.

143. The reinsertion is documented by three consecutive Experian records concerning the same consumer file: neither tradeline appears on the July 30, 2026 complete file disclosure (Exhibit G-2); both appear on the report accompanying the August 20, 2026 dispute results (Exhibit C); and both appear on the August 26, 2026 complete file disclosure, carrying Balance Updated dates of August 3, 2026 (Exhibit D).

144. Because account ending 9813 was not on Plaintiff's file on July 30, 2026, and because the tradeline itself reports no data for every month from January 2025 through July 2026, the Charge Off rating it now reports for August 2026 cannot be the continuation of an existing reporting history. It is a new derogatory rating, furnished in the same month the deleted tradeline was returned to the file, on a debt charged off in 2024.

145. If American Express provided the certification required by § 1681i(a)(5)(B)(i), it certified as complete and accurate information that was neither, for the reasons pleaded above — including a status date of "Aug 2026" on accounts charged off in 2024, a Balance Updated date of August 3, 2026 paired with Status Updated dates of December 2023 and June 2024, blank credit limits, "1 Month" terms, and payment grids that oscillate between charge-off and no-data.

146. If American Express provided no certification, it caused previously deleted derogatory information to be re-reported into Plaintiff's file in circumvention of the statutory bar on reinsertion.

147. Under either account, American Express failed to conduct a reasonable investigation, failed to report accurate results, and failed to modify, delete, or block information that

was inaccurate and incapable of verification, in violation of 15 U.S.C. § 1681s-2(b)(1)(A), (C), and (E).

148. The re-aging of the delinquency dates on reinserted charge-offs — advancing a 2024 default to a "past due as of Aug 2026" status — is an independent inaccuracy furnished after notice of dispute, and an independent violation of § 1681s-2(b).

149. These violations were willful within the meaning of 15 U.S.C. § 1681n, or in the alternative negligent within the meaning of 15 U.S.C. § 1681o. Deleting a tradeline and then returning it to the file weeks later with refreshed delinquency dates is not an inadvertent clerical event; it requires an affirmative reporting action by the furnisher. Seven days separated Experian's written confirmation that the tradelines had been removed from Plaintiff's credit report from the August 3, 2026 balance-update date they carried when they returned, and one of the two had reported no data at all for the preceding twenty months. Returning that data with a current-month charge-off rating and a current past-due date required a deliberate furnishing decision, made in reckless disregard of the reinsertion bar and of the falsity of the dates furnished.

150. As a direct and proximate result, Plaintiff has suffered the injuries described above and is entitled to actual damages, statutory damages of not less than $100 and not more than $1,000 as to each Defendant, punitive damages, costs, and reasonable attorney's fees.

**COUNT III — Violation of 15 U.S.C. § 1681s-2(b) — Capital One, N.A.**

151. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

152. Capital One received notice of Plaintiff's dispute from Experian pursuant to 15 U.S.C. § 1681i(a)(2), together with the annotated exhibits and supporting documents Plaintiff submitted.

153. Capital One failed to conduct a reasonable investigation of the disputed information, in violation of 15 U.S.C. § 1681s-2(b)(1)(A). A tradeline reporting "Paid, Closed. $37,035 written off" in a single status line, with a blank balance field, a highest balance exceeding the credit limit, and thirty-two consecutive months of charge-off status, cannot survive a reasonable investigation intact. It did.

154. On information and belief, Experian transmitted Plaintiff's dispute to Capital One through the e-OSCAR Automated Consumer Dispute Verification system, which reduced Plaintiff's documented dispute and its annotated exhibits to a standardized dispute code, and Capital One verified both tradelines by automated comparison of that code against the same Metro 2 reporting tape that generated them, without human review of the documents Plaintiff supplied. An automated cross-check of the furnisher's own reporting tape is not the reasonable investigation the statute requires. See Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 430-31 (4th Cir. 2004).

155. Capital One failed to review all relevant information Experian provided, in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

156. Capital One reported inaccurate results of its investigation to Experian, in violation of 15 U.S.C. § 1681s-2(b)(1)(C), stating that the disputed fields were accurate as reported.

157. Capital One failed to modify, delete, or permanently block inaccurate and incomplete information, in violation of 15 U.S.C. § 1681s-2(b)(1)(E). On account 515676, it continued after the investigation to report twenty consecutive months of fresh charge-off status generated from a single frozen October 2024 data point, and to report contradictory Status Updated and Balance Updated dates. On account 552869, it continued to report an

account as simultaneously paid and written off, with no balance and with internally inconsistent amounts.

158. On information and belief, Capital One failed to report its findings to the other nationwide consumer reporting agencies to which it furnished the same information, in violation of 15 U.S.C. § 1681s-2(b)(1)(D).

159. The foregoing violations were willful within the meaning of 15 U.S.C. § 1681n. Capital One is a sophisticated institutional furnisher that reports to the nationwide consumer reporting agencies at scale, is fully familiar with the FCRA and with Metro 2 reporting requirements, and knew or acted in reckless disregard of the fact that the reporting described above was inaccurate, incomplete, and materially misleading. Plaintiff handed it the defects, field by field, with annotated exhibits. It verified them anyway. During the very reinvestigation window in which Capital One was charged with investigating account beginning 515676, it advanced the reported past-due date on that static, charged-off obligation from July 2026 to August 2026 — refreshing the apparent recency of the delinquency at the same moment it purported to verify it.

160. In the alternative, the foregoing violations were negligent within the meaning of 15 U.S.C. § 1681o.

161. As a direct and proximate result, Plaintiff has suffered the injuries described above and is entitled to actual damages, statutory damages of not less than $100 and not more than $1,000 as to each Defendant, punitive damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1681n and 1681o.

**COUNT IV — Violation of 15 U.S.C. § 1681s-2(b) — BMW Financial Services NA, LLC**

162. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

163. BMW Financial received notice of Plaintiff's dispute from Experian pursuant to 15 U.S.C. § 1681i(a)(2), together with the annotated exhibits and supporting documents Plaintiff submitted.

164. BMW Financial failed to conduct a reasonable investigation of the disputed information, in violation of 15 U.S.C. § 1681s-2(b)(1)(A). Plaintiff's dispute identified two distinct BMW Financial tradelines sharing the same masked account prefix and addressed each separately, by origination date, by responsibility designation, and by defect. BMW Financial corrected one and left the other untouched, without ever addressing the substance of the dispute directed at it.

165. On information and belief, Experian transmitted Plaintiff's dispute to BMW Financial through the e-OSCAR Automated Consumer Dispute Verification system, which reduced Plaintiff's documented dispute and its annotated exhibits to a standardized dispute code, and BMW Financial responded by automated comparison of that code against the same reporting tape that generated the tradeline, without human review of the documents Plaintiff supplied. An automated cross-check of the furnisher's own reporting tape is not the reasonable investigation the statute requires. See Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 430-31 (4th Cir. 2004).

166. BMW Financial failed to review all relevant information Experian provided, in violation of 15 U.S.C. § 1681s-2(b)(1)(B). Plaintiff's dispute enclosed an annotated exhibit for the June 30, 2021 lease specifically identifying the March 2022 rating, the "Individual" responsibility designation, and the "Loan assumed by another party" comment as an irreconcilable set.

167. BMW Financial failed to modify, delete, or permanently block information it could not verify, in violation of 15 U.S.C. § 1681s-2(b)(1)(E). Plaintiff expressly demanded deletion of the March 2022 rating absent records attributing that delinquency to him rather than to the party that assumed the obligation. BMW Financial produced no such records and deleted nothing.

168. BMW Financial reported inaccurate results to Experian, in violation of 15 U.S.C. § 1681s-2(b)(1)(C), and on information and belief failed to report its findings to the other nationwide consumer reporting agencies, in violation of § 1681s-2(b)(1)(D).

169. The foregoing violations were willful within the meaning of 15 U.S.C. § 1681n. BMW Financial is a sophisticated institutional furnisher that reports to the nationwide consumer reporting agencies at scale, is fully familiar with the FCRA and with Metro 2 reporting requirements, and knew or acted in reckless disregard of the fact that the reporting described above was inaccurate, incomplete, and materially misleading. Plaintiff handed it the defects, field by field, with annotated exhibits. It verified them anyway. BMW Financial demonstrably opened and processed the dispute file: it corrected the companion tradeline raised at Dispute 6 while leaving every challenged field on the Dispute 4 tradeline untouched. The omission was not a failure of transmission; it was a decision.

170. In the alternative, the foregoing violations were negligent within the meaning of 15 U.S.C. § 1681o.

171. As a direct and proximate result, Plaintiff has suffered the injuries described above and is entitled to actual damages, statutory damages of not less than $100 and not more than $1,000 as to each Defendant, punitive damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1681n and 1681o.

**COUNT V — Violation of 15 U.S.C. § 1681s-2(b) — Service Finance Company, LLC**

172. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

173. Service Finance received notice of Plaintiff's dispute from Experian pursuant to 15 U.S.C. § 1681i(a)(2), together with the annotated exhibits and supporting documents Plaintiff submitted.

174. Service Finance failed to conduct a reasonable investigation of the disputed information, in violation of 15 U.S.C. § 1681s-2(b)(1)(A). The dispute was narrow and specific: two 30-day ratings, December 2020 and May 2022, on an account otherwise reported paid and closed. Verifying two individual rated months requires nothing more than retrieving the payment ledger for those two months. Service Finance verified without producing anything.

175. On information and belief, Experian transmitted Plaintiff's dispute to Service Finance through the e-OSCAR Automated Consumer Dispute Verification system, which reduced Plaintiff's documented dispute and its annotated exhibits to a standardized dispute code, and Service Finance verified both rated months by automated comparison of that code against the same reporting tape that generated the tradeline, without retrieving the payment ledger for either month and without human review of the documents Plaintiff supplied. An automated cross-check of the furnisher's own reporting tape is not the reasonable investigation the statute requires. See Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 430-31 (4th Cir. 2004).

176. Service Finance failed to review all relevant information Experian provided, in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

177. Service Finance reported inaccurate results of its investigation to Experian, in violation of 15 U.S.C. § 1681s-2(b)(1)(C).

178. Service Finance failed to modify, delete, or permanently block ratings it did not and could not verify, in violation of 15 U.S.C. § 1681s-2(b)(1)(E). Plaintiff expressly conditioned his demand on the production of records verifying each rated month. No such records were produced and the ratings remain.

179. On information and belief, a reasonable investigation would also have identified the relationship between account 213997X and account 213999X — two obligations reported as originated on the same day, November 14, 2019, with different principal amounts, different terms, and opposite payment histories — and would have resolved whether the derogatory ratings are correctly attributed to account 213997X at all. Service Finance conducted no such inquiry.

180. On information and belief, Service Finance failed to report its findings to the other nationwide consumer reporting agencies to which it furnished the same information, in violation of 15 U.S.C. § 1681s-2(b)(1)(D).

181. The foregoing violations were willful within the meaning of 15 U.S.C. § 1681n. Service Finance is a sophisticated institutional furnisher that reports to the nationwide consumer reporting agencies at scale, is fully familiar with the FCRA and with Metro 2 reporting requirements, and knew or acted in reckless disregard of the fact that the reporting described above was inaccurate, incomplete, and materially misleading. Plaintiff handed it the defects, field by field, with annotated exhibits. It verified them anyway. The dispute required Service Finance to verify two rated months — December 2020 and May 2022. It verified both without producing the payment ledger on which either rating would appear,

and it did so while its own reporting showed a companion account opened the same day with an opposite payment history.

182. In the alternative, the foregoing violations were negligent within the meaning of 15 U.S.C. § 1681o.

183. As a direct and proximate result, Plaintiff has suffered the injuries described above and is entitled to actual damages, statutory damages of not less than $100 and not more than $1,000 as to each Defendant, punitive damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1681n and 1681o.

## VII. Prayer for Relief

WHEREFORE, Plaintiff Artem Musheyev respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally where appropriate, and award:

a. Actual damages against each Defendant pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1), in an amount to be determined at trial;

b. Statutory damages of not less than $100 and not more than $1,000 as to each Defendant for willful noncompliance, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

c. Punitive damages against each Defendant in an amount the Court or jury deems proper pursuant to 15 U.S.C. § 1681n(a)(2);

d. Costs of this action and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

e. Pre-judgment and post-judgment interest as permitted by law; and

f. Such other and further relief as this Court deems just and proper.

## Demand for Jury Trial

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: 9/8/2026, 2026

Respectfully submitted,

ARTEM MUSHEYEV

Plaintiff, Pro Se
21116 82nd Avenue
Queens Village, New York 11427-1024
[TELEPHONE]
[EMAIL]

**Index of Exhibits**

Exhibit C — Experian dispute results dated August 20, 2026, Report No. 1805-4325-14, including the accompanying copy of Plaintiff's credit report.

Exhibit D — Experian complete file disclosure dated August 26, 2026, including FICO Score 8 of 694 and score-factor analysis. (53 pages)

Exhibit F — Plaintiff's written dispute to Experian dated July 17, 2026, sent by USPS Certified Mail, article no. 9207 1901 4298 0490 2726 75, with the annotated tradeline excerpts designated B-1 through B-6 within the dispute; copy of New York State identification card; copy of Social Security card; Spectrum utility statement as proof of address; and the USPS tracking record showing delivery to Experian. (12 pages)

Exhibit G-1 — Experian dispute results dated July 27, 2026, report number 3067-2988-44, including the accompanying copy of Plaintiff's credit report. Reports American Express account ending 3293 and American Express account ending 9813 as "Deleted," and reports the five remaining disputed tradelines as "Pending."

Exhibit G-2 — Experian complete file disclosure dated July 30, 2026, printable report no. 202607300904212510, including FICO Score 8 of 709 and score-factor analysis. Obtained while the July 17, 2026 reinvestigation was pending. Establishes that neither American Express account ending 3293 nor account ending 9813 was on Plaintiff's Experian file as of that date. (52 pages)

Exhibit J-1 — LightStream (Truist Bank) loan application dated June 2026 for $100,000 over 36 months.

Exhibit J-2 — LightStream (Truist Bank) adverse action notice dated June 22, 2026, Reference ID 46482043.

JS 44C/SDNY
REV. 12/2025

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Artem Musheyev | AMERICAN EXPRESS NATIONAL BANK; CAPITAL ONE, N.A., successor by merger to |
| ATTORNEYS (Firm Name, Address, And Telephone Number) | ATTORNEYS (If Known) |
| Pro Se 1(646)739-8428 | |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

15 U.S.C. §§ 1681 et seq. — Fair Credit Reporting Act; 15 U.S.C. § 1681s-2(b), § 1681n, & §1681o.

Has this action, case, or proceeding, or one essentially the same, been previously filed in SDNY at any time? No ☐ Yes ☐ ____________
(If yes, Judge Previously Assigned)

If yes, was this case Vol. ☐ Invol. ☐ Dismissed. No ☐ Yes ☐ If yes, give date ____________ & Case No. ____________

Is this an international arbitration case? Yes ☐ No ☐

## NATURE OF SUIT *(PLACE AN [x] IN ONE BOX ONLY)*

Click here for: Nature of Suit Code Descriptions.

### TORTS

**Contract**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery Of Overpayment & Enforcement Of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery Of Defaulted Student Loans (Excl Veterans)
- ☐ 153 Recovery Of Overpayment Of Veteran's Benefits
- ☐ 160 Stockholders Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**Torts**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury Product Liability
- ☐ 367 Health Care/ Pharmaceutical
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth In Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts To Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Civil Rights**
- ☐ 440 Other Civil Rights (Non-Prisoner)
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Americans With Disabilities - Employment
- ☐ 446 Americans With Disabilities - Other
- ☐ 448 Education

**Prisoner Petitions**

Habeas Corpus
- ☐ 463 Alien Detainee
- ☐ 510 Motions To Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions Of Confinement

### ACTIONS UNDER STATUTES

**Forfeiture/Penalty**
- ☐ 625 Drug Related Seizure Of Property 21 USC 881
- ☐ 690 Other

**Labor**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act (FMLA)
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act (ERISA)

**Immigration**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Intellectual Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**Social Security**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(G))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**Federal Tax Suits**
- ☐ 870 Taxes (U.S. Plaintiff Or Defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Other Statutes**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks & Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced & Corrupt Organization Act (Rico)
- ☒ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Satellite TV
- ☐ 850 Securities/ Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom Of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/ Review or Appeal of Agency Decision
- ☐ 950 Constitutionality Of State Statutes

<u>Check if demanded in complaint:</u>

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $____________ OTHER ____________

*Check YES only if demanded in complaint*

JURY DEMAND: ☒ YES ☐ NO

Do you claim this case is related to a civil case now pending in S.D.N.Y. as defined by Local Rule For Division of Business 13?
If so, state:

JUDGE ____________ DOCKET NUMBER____________

NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32) with an explanation as to why the cases are deemed related.

*(PLACE AN X IN ONE BOX ONLY)*

## ORIGIN

[X] 1 Original Proceeding

[ ] 2 Removed from State Court
- [ ] a. all parties represented
- [ ] b. At least one party is pro se.

[ ] 3 Remanded from Appellate Court

[ ] 4 Reinstated or Reopened

[ ] 5 Transferred from (Specify District)

[ ] 6 Multidistrict Litigation (Transferred)

[ ] 7 Appeal to District Judge from Magistrate Judge

[ ] 8 Multidistrict Litigation (Direct File)

*(PLACE AN x IN ONE BOX ONLY)*

## BASIS OF JURISDICTION

***IF DIVERSITY, INDICATE CITIZENSHIP BELOW.***

[ ] 1 U.S. Government Plaintiff

[ ] 2 U.S. Government Defendant

[X] 3 Federal Question (U.S. Government NOT A PARTY)

[ ] 4 Diversity

## CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

21116 82nd Ave, Queens Village, NY 11427

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

AMERICAN EXPRESS NATIONAL BANK
115 West Towne Ridge Parkway
Sandy, UT 84070
Salt Lake County

CAPITAL ONE, N.A.

DEFENDANT(S) ADDRESS UNKNOWN

Representation is hereby made that, at this time, I have been unable, with reasonable diligence, to ascertain the residence addresses of the following Defendants:

## COURTHOUSE ASSIGNMENT

I have reviewed Rules 18(a) and 20(a) of the Rules for the Division of Business Among District Judges, Southern District of New York, and I hereby certify that this case should be assigned to the courthouse indicated below pursuant thereto.

Check one: THIS ACTION SHOULD BE ASSIGNED TO: [ ] WHITE PLAINS [ ] MANHATTAN
(DO NOT check either box if this a PRISONER PETITION.)

DATE

SIGNATURE OF ATTORNEY OF RECORD

ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
[ ] YES (DATE ADMITTED Mo. _______ Yr. _______)
Attorney Bar Code #__________

RECEIPT #

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge ______________________________ is so Designated.

Tammi M. Hellwig, Clerk of Court by ______________ Deputy Clerk, DATED ______________.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)